|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | UNITED STATES DISTRICT COURT | |
| 7 | WESTERN DISTRICT OF WASHINGTON | |
| 8 | AT SEATTLE | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THERESA ORTLOFF,

        Plaintiff,

    v.

DAVE TRIMMER, *et al.*,

        Defendants.

Case No. C16-1257RSL

ORDER GRANTING
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 36. The Court has reviewed the parties' memoranda, declarations, exhibits, and the remainder of the record.[1] For the following reasons, the motion is GRANTED.

## I.    BACKGROUND

In this civil rights case, plaintiff Theresa Ortloff claims that her constitutional rights were violated when she was terminated from her job as an oiler with the Washington State Ferries (WSF). Plaintiff started with WSF in July 2013, after being hired as an "on call" oiler under a probationary employment arrangement. Probationary employment is a way for employers to evaluate employees during a trial period in order to gauge the employee's job performance before permanent employment is granted. The terms of plaintiff's employment were governed by a Collective Bargaining Agreement (CBA), the relevant portion of which provides:

---

[1] The Court concludes the motion can be decided on the papers submitted. Plaintiff's request for oral argument is denied.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

> Newly hired employees shall serve a probationary period of five (5) calendar months. The employee may be terminated during the probationary period or at the end of a probationary period for a bona fide reason(s) relating to the business operation and said employee shall not have recourse through the grievance procedure.

Dkt. # 38-1 at 3.

Plaintiff claims she was mistreated and eventually terminated because she advocated for probationary employees and because she was dating Floyd McLaughlin, a WSF engineer who previously testified in a widely publicized whistleblower case against the agency. She relies on a number of interactions and email conversations as evidence of mistreatment, abuse, and retaliation.

In August 2013, plaintiff had a negative interaction with defendant David Trimmer, the Chief Engineer aboard the ferry Chelan. Afterward, Trimmer wrote an email to the oiler dispatcher and to defendant Elizabeth Kosa, the Senior Port Engineer and one of plaintiff's supervisors. In it, he asked that plaintiff not be assigned to the Chelan again because she lacked "a basic level of understanding of ship board systems and operations." Dkt. # 38-1 at 6. He followed up in that email conversation by listing in detail plaintiff's shortcomings and the reasons he did not want her assigned to his vessel again. Dkt. # 38-1 at 5.

Plaintiff also had a dispute with Chief Staff Engineer Michael LaCroix, who is not a defendant, over the proper pay code for what appears to be one hour of work in November 2013. See Dkt. # 38-1 at 14–16 (Ortloff-LaCroix email exchange); Dkt. # 49-2 at 12 (timesheet). Days later, plaintiff called and cancelled her shift aboard the ferry Kennewick because LaCroix would also be working aboard. Her last-minute cancellation drew a complaint from the vessel's captain. Dkt. # 38-1 at 8–9.

Plaintiff had difficulties with other cancellations and unavailabilities, which were of concern because the on-call nature of her position required that she be available in case dispatch needed to bring her in. In particular, the dispatcher discussed with plaintiff that she called in as unavailable because she was driving McLaughlin to the airport. Dkt. # 37-1 at 30.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

Eventually, the complaints about plaintiff's work performance and unavailability during her probationary period led management to decide she should be terminated. Plaintiff was terminated in a letter dated November 22, 2013, and sent by defendant Steven Vonheeder, Director of Vessels. The letter read in relevant part:

> I have determined your performance and commitment to Washington State Ferries during your probation period does not meet expectations of an On-Call employee by being available for work at all times. On too many occasions you have been called to be dispatched and assignments have been refused or negotiated for a variety of reasons.

Dkt. # 41-1 at 2.

In 2014, plaintiff again sought to be hired as an oiler but was unsuccessful. Plaintiff later learned that her name appeared on a "Do Not Hire" list—a list of individuals management had decided not to hire again in the future. See Dkt. # 48 at 163.

Plaintiff filed a complaint under 42 U.S.C. § 1983, alleging that her negative interactions and eventual termination were done in retaliation for constitutionally protected conduct. In particular, she claims that she suffered mistreatment and termination because she was associated with and supported McLaughlin. She claims this engendered animus and hostility against her because of his role in the years-old whistleblower case, which upset people within WSF. She also claims that her pay dispute with LaCroix amounted to advocacy for the rights of probationary employees, and that her mistreatment and termination were in retaliation for that advocacy. After discovery, defendants moved for summary judgment. Dkt. # 36.

## II.     DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The Court

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor," Krechman v. Cty. of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013), but a "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

**A.  First Amendment Claims**

In causes of action one, two, three, and seven, plaintiff claims she was punished in retaliation for conduct protected by the First Amendment. Her claims allege that she was terminated, harassed, and precluded from being rehired because she advocated on behalf of probationary oilers and because of her association with McLaughlin.

To prevail on her claims, she "must prove (1) that the conduct at issue is constitutionally protected, and (2) that it was a substantial or motivating factor in the punishment." Settlegoode v. Portland Pub. Sch., 371 F.3d 503, 510 (9th Cir. 2004).

Assuming plaintiff's association with McLaughlin or her purported advocacy amounted to protected conduct,[2] the record does not support a reasonable inference that either was a substantial or motivating factor for punishment. She alleges she was punished in the form of harassment, false statements, termination of her probationary employment, and WSF's refusal to rehire her. For defendant Trimmer, she points to their interaction aboard the Chelan and to the emails asking that she not be assigned there in the future. Plaintiff's characterizations of the interaction and emails strain reasonableness based on the record,[3] but even if the record

---

[2]  The parties do not engage whether plaintiff can survive summary judgment on the element of protected conduct, but the Court has its own doubts. Plaintiff does not cite any cases, nor is the Court aware of any, that hold "association for expressive purposes," Dkt. # 68 at 16–18, can serve as the basis for a cognizable First Amendment claim. As for her advocacy, there is tenuous support in the record whether the grievances she raised with superiors were on a matter of public concern or expressed in her capacity as a private citizen. See Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).

[3]  For example, plaintiff states Trimmer was "spying" on her and "secretly observing" her while she worked, Dkt. # 2, 14, but the record cites supporting those characterizations—which refer to plaintiff's own affidavit—mention nothing of spying or secretive observation, see Dkt. # 49 ¶ 11. She describes Trimmer's email as "abusive," Dkt. # 44 at 2, when it mostly reads like a run-of-the-mill complaint about work performance, Dkt. # 49-1 at 9–10. Finally, she asserts that his email "associated

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

supported her assertions that he harassed her, spied on her, or spread false statements about her, nothing in the record connects those alleged bad acts to protected conduct. She homes in on a portion of his email that says, "She should not have an Oilers endorsement. I know how she got it but she shouldn't have it." Dkt. # 49-1 at 9. Plaintiff argues that refers to her relationship with McLaughlin. Trimmer gave a different interpretation in his deposition,[4] but even plaintiff's interpretation does not reasonably give rise to an inference that McLaughlin's previous testimony or plaintiff's advocacy were substantial or motivating factors for her treatment. See Settlegoode, 371 F.3d at 510.

Plaintiff also claims retaliation stemming from the pay dispute with LaCroix. The record does not support a reasonable inference that constitutionally protected conduct was a substantial or motivating factor of any retaliation that might be inferred from that dispute. See id.

Finally, plaintiff makes much of the number of times WSF recorded her as unavailable. One of defendants' interrogatory responses reflects twenty-one unavailabilities, but plaintiff makes the case that she was only unavailable ten times. She cites this as evidence that she was fired on pretext. Even were plaintiff correct about the unavailability discrepancy, the record does not suggest it would have made a difference. Instead, the issue with her unavailabilities was that she alerted dispatch at the eleventh hour and was at times unavailable for illegitimate reasons. The apparent discrepancy plaintiff emphasizes is not evidence of pretextual firing or retaliation.

The record simply does not support a reasonable inference that protected conduct was a motivating factor, much less a substantial one, for any of the alleged harassment, mistreatment, or decisions to terminate and not rehire her. Instead, the record suggests the defendants resolved that her performance was not adequate to be kept on after her probationary period and that her performance and interpersonal conflicts also made her unsuitable for hiring a second time. For

---

the adjective 'stupid' with Ms. Ortloff," Dkt. # 44 at 2, when the email actually said, "Generally speaking, I do *not* believe she is a stupid person," Dkt. # 49-1 at 9 (emphasis added).

[4] In his deposition, Trimmer explained his statement as meaning "she got her credentialing, her oilers endorsement, by going to some short-term school for a month or two, and then serving a limited internship on a Washington State Ferry vessel." Dkt. # 48 at 31.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

these reasons, the Court concludes that summary judgment in favor of defendants is appropriate on causes of action one, two, three, and seven.

**B.      Due Process Claims**

Plaintiff's remaining claims allege violations of plaintiff's rights to procedural and substantive due process. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994). Plaintiff claims she was deprived of both a property interest in continued probationary employment and a liberty interest in her reputation, business, and employment opportunities.

  **1.      Property Interest**

To make out a due process claim based on a constitutionally protected property interest, plaintiff must show she had a legitimate claim of entitlement to continued probationary employment and not merely "an abstract need or desire" or "unilateral expectation of it." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "[T]he existence and dimensions of [claimed property interests] 'are defined by existing rules or understandings that stem from an independent source such as state law.'" McGraw v. City of Huntington Beach, 882 F.2d 384, 389 (9th Cir. 1989) (quoting Roth, 408 U.S. at 577).

Washington law generally provides that state employees serving under a probationary employment arrangement have no constitutionally protected property interest in continued employment. State ex rel. Swartout v. Civil Serv. Comm'n of City of Spokane, 25 Wn.App. 174, 182 (1980). That finds support in the CBA's text, which explicitly provides that probationary employees may be terminated during the probationary period without recourse to any grievance procedures. See Dkt. # 38-1 at 3.

Plaintiff argues that the CBA creates a property interest because it provides that probationary employees may be terminated "for a bona fide reason(s) relating to the business operation." Id. Ninth Circuit precedent makes clear that where the only substantive restrictions on government decisionmaking are "reasonableness" or "good faith," it does not give rise to a constitutionally protected property interest. Allen v. City of Beverly Hills, 911 F.2d 367, 371

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

(9th Cir. 1990); Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980). Whatever constraints the CBA's "bona fide reason(s)" language places on the termination of probationary employees, it does not create for plaintiff a property interest sufficient to support a due process claim. See id. For that reason, the Court concludes summary judgment for the defendants is warranted on causes of action four and five.

### 2. Liberty Interest

Plaintiff also brings a due process claim based on the deprivation of a constitutionally protected liberty interest. The liberty interest protected by the Fourteenth Amendment extends to a person's right to engage in the common occupations of life. Hyland v. Wonder, 972 F.2d 1129, 1141 (9th Cir. 1992). Termination of public employment may implicate that interest if the government "so severely stigmatize[s] the employee that she cannot avail herself of other employment opportunities." Id. The stigma must be "severe and genuinely debilitating" so as to prevent her from taking advantage of other employment opportunities. Id. Assertions of general workplace "incompetence or inability to get along with others," however, do not implicate a protected liberty interest. Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991). In addition, "[u]npublicized accusations do not infringe constitutional liberty interests," Bollow v. Fed. Reserve Bank of San Francisco, 650 F.2d 1093, 1101 (9th Cir. 1981), and the lost business or employment prospects must extend beyond a specific employer, Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1128 (9th Cir. 2001), as amended (Mar. 14, 2001); see id. ("We have consistently held that people do not have liberty interests in a specific employer.").

Here, plaintiff cannot show the existence of a constitutionally protected liberty interest. None of the allegedly stigmatizing statements was made publicly.[5] See Bollow, 650 F.2d at 1101. The statements in plaintiff's termination letter were not "severe and debilitating," Hyland, 972 F.2d at 1141, and instead appear limited to statements of poor workplace performance, see

---

[5] Defendant Lynne Griffith's 2016 email addressing a media report about wasteful WSF spending, Dkt. # 49-2 at 39, could not even conceivably amount to a publicly stigmatizing statement. It was written years after this case's relevant events, it mentions "disgruntled former employees" with no suggestion that those employees include plaintiff, and it has no other plausible connection to plaintiff.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

Wheaton, 931 F.2d at 617. Any impairment of future employment prospects resulting from her termination or from the refusal to hire her again was limited to WSF. Plaintiff "remained free to obtain employment . . . with any other employer," Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 896 (1961), and WSF was not constitutionally obligated to consider hiring someone it had already terminated once.

The Court concludes that plaintiff has not sufficiently shown a liberty interest adequate to support a due process claim, and that summary judgment for the defendants is warranted on cause of action six.

### III. CONCLUSION

For the foregoing reasons,[6] the Court concludes that viewing all the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment, Dkt. # 36, is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

DATED this 29th day of May, 2018.

*MMS S Lasnik*
Robert S. Lasnik
United States District Judge

---

[6] Defendants additionally argue that they are entitled to qualified immunity, because plaintiff cannot show violations of a clearly established statutory or constitutional right. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Court need not address those arguments given the Court's conclusion that summary judgment is warranted on the underlying claims.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8